UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED SPECIALTY INSURANCE                      CIVIL ACTION
COMPANY, ET AL.

VERSUS                                          NO. 25-1501

TAHOE INVESTMENTS, LLC DBA                      SECTION "R" (3)
MR. BINKYS #3, ET AL.

## ORDER AND REASONS

Plaintiffs United Specialty Insurance Company ("United") and Century Surety Company ("Century") move for summary judgment in this declaratory judgment action.[1] Defendants Tahoe Investments, LLC DBA Mr. Binkys #3 ("Tahoe")[2] and Jenna Combel[3] oppose the motion. For the following reasons, the Court grants the motion for summary judgment.

## I.    BACKGROUND

### A. The Underlying Personal Injury Litigation

On September 18, 2024, Jenna Combel filed suit in state court for bodily injuries against Tahoe and twenty other defendants she alleges are

---

[1]    R. Doc. 18. All R. Doc. citations are in the record for 25-1501 unless otherwise noted.
[2]    R. Doc. 28.
[3]    R. Doc. 27.

1

distributors or manufacturers of nitrous oxide.[4]  The state court case was removed to this Court on June 18, 2025.  Combel alleges that nitrous oxide is often "sold and inhaled as a drug by users to obtain a high."[5]  When used in that manner, Combel alleges that nitrous oxide is "commonly referred to as whippets, poppers, or laughing gas."[6]

Combel alleges that she began inhaling nitrous oxide—including nitrous oxide she purchased from Tahoe—in 2019 and continued to do so until 2023.[7]  Combel alleges that because of her inhalation of nitrous oxide, she has suffered injuries, including paralysis and nerve damage.[8]  She sued alleged distributors and manufacturers of nitrous oxide for her injuries.

## B. The Declaratory Judgment Litigation

After receiving notice of the personal-injury litigation, United and Century filed a reservation of rights letter to Tahoe, agreeing to provide a defense subject to the reservation of rights to deny coverage under the psychotropic substances exclusion in their policies.[9]  United and Century

---

[4]  R. Doc. 1, *Combel v. Great International Supply Chain Management Company*, 25-1252 (E.D. La. Filed June 18, 2025).

[5]  R. Doc. 1-1 at 1, *Combel v. Great International Supply Chain Management Company*, 25-1252 (E.D. La. Filed June 18, 2025).

[6]  *Id.*

[7]  *Id.* at 12.

[8]  *Id.*

[9]  R. Docs. 21-1 at 5; 28 at 2.

then filed this declaratory judgment action seeking a determination of their coverage obligations, including a declaration that they owe no duty to defend or indemnify Tahoe in the underlying action.[10]

The undisputed facts are as follows. United provided insurance coverage to Tahoe from March 31, 2018 to March 31, 2020.[11] Century provided insurance coverage to Tahoe from March 31, 2020 to March 31, 2024.[12] The policies, though not identical, all state that coverage includes "those sums the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which the insurance applies."[13] The policies all state that there is "no duty to defend" against a suit seeking damages "to which the insurance does not apply."[14]

The policies contain multiple exclusions, one of which is at issue here. The insurance "does not apply to . . . 'bodily injury'" resulting from "inhalation of . . . psychotropic substances."[15] The policies define a "psychotropic substance" as a "legal or illegal drug or substance that: (1) [a]ffects the mind, mood or other mental process; or (2) [i]mpacts the brain

---

[10] R. Doc. 21-1, at 2-3; R. Doc. 1.
[11] R. Doc. 21-1, at 3-4.
[12] *Id.* at 4.
[13] *Id.*
[14] *Id.*
[15] R. Doc. 21-1, at 8.

3

or central nervous system; or (3) [i]s hallucinogenic."[16]  The policies provide that "[p]sychotropic substances include . . . whippets, laughing gas [and] poppers . . . ."[17]

United and Century now move for summary judgment, arguing that the insurance policies unambiguously preclude coverage for the injuries Combel has alleged, and thus United and Century have no duty to defend or indemnify.[18]  The Court considers the motion below.

## II.  LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The Court considers the evidence in the record without making credibility determinations or weighing the evidence.  *Delta & Pine Land Co. v. Nationwide Agribusiness Ins.*, 530 F.3d 395, 398-99 (5th Cir. 2008).  All reasonable inferences are drawn in favor of the nonmoving party.  *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).  If the record could not lead a rational trier of fact to find for

---

16      *Id.*
17      *Id.* at 5.
18      R. Doc. 23-1, at 6.

the nonmoving party, there is no genuine dispute of material fact. *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with evidence sufficient to demonstrate the existence of a genuine dispute of material fact, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that the material in the record capable of being made admissible is insufficient with respect to an essential element of the nonmoving party's claim. Fed. R. Civ. P. 56(c); s*ee Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to material capable of being made admissible, set out specific facts showing that a genuine dispute exists. *See Celotex*, 477 U.S. at 324. The nonmovant may

not rest upon the pleadings but must identify specific facts that establish a genuine issue for resolution. *See, e.g., id.*

## III.  DISCUSSION

The parties agree that Louisiana law applies.[19]  Under Louisiana law, an insurer's duty to defend an insured is "a separate and distinct inquiry from that of the insurer's duty to indemnify a covered claim after judgment against the insured in the underlying liability case." *Martco Ltd. P'ship v. Wellons, Inc.,* 588 F.3d 864, 872 (5th Cir. 2009) (citing *Elliott v. Cont'l Cas. Co.,* 949 So. 2d 1247, 1250 (La. 2007)).  The Court will address each duty separately.

### A. Duty to Defend

An insurer's duty to defend suits against its insured is broader than its obligation to indemnify for damage claims. *Hardy v. Hartford Ins. Co.,* 236 F.3d 287, 290 (5th Cir. 2001); *Suire v. Lafayette City–Parish Consol. Gov't,* 907 So. 2d 37, 52 (La. 2005).  Under Louisiana law, courts apply the "Eight Corners" rule to determine whether an insurer has a duty to defend. *Lamar Advert. v. Cont'l Cas. Co.,* 396 F.3d 654, 660 (5th Cir. 2005).  The rule requires that, if, after comparing the terms of the policy to the allegations of the complaint, the court determines "'there are any facts in the complaint

---

[19]    R. Docs. 21-1 at 6, 27 at 2, 28 at 6.

which, if taken as true, support a claim for which coverage is not unambiguously excluded,' the insurer must defend the insured." *Id.*

While the court must accept as true the facts alleged in the complaint for purposes of applying the Eight Corners rule, the court need not credit "statements or conclusions . . . that are unsupported by factual allegations." *Coleman v. Sch. Bd. of Richland Parish,* 418 F.3d 511, 523 (5th Cir. 2005) (quoting *Jensen v. Snellings,* 841 F.2d 600, 612 (5th Cir. 1988)). "[O]nce a complaint states one claim within the policy's coverage, the insurer has a duty to accept defense of the entire lawsuit, even though other claims in the complaint fall outside of the policy's coverage." *Coleman,* 418 F.3d at 523 (quoting *Montgomery Elevator Co. v. Bldg. Eng'g Servs. Co.,* 730 F.2d 377, 382 (5th Cir. 1984)).

Here, the relevant pleading for determining Century's and United's duty to defend is Combel's complaint. Ordinarily, the Court would undertake this analysis in two steps: first, the Court would determine whether the "complaint allege[d] a set of facts that would fall within coverage;" second, the Court would determine whether Century and United carried their burden of proving any policy exclusion applies. *See Martco,* 588 F.3d at 874. Here, however, the Court finds that Century and United easily meet their burden of proving that coverage under the policies is foreclosed by a policy exclusion.

7

This single issue is dispositive of all other aspects of Century and United's duty to provide a defense. *See Wagner v. Tammany Holding Co. LLC*, 135 So. 3d 77, 86 (La. App. 4 Cir. 2012) ("When an exclusion to a policy is applicable, the insurer owes no duty to defend or indemnify the insured."). Thus, the Court assumes for the purposes of this order that the claims against Tahoe alleged facts that would fall within coverage and proceeds directly to the issue of whether an exclusion applies. *See, e.g., Chet Morrison Contracts, LLC v. One Beacon American Ins. Co.*, 132 F. Supp. 3d 825, 830-31 (E.D. La. 2015).

The policies' coverage includes "those sums the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which the insurance applies."[20]  The policies state that there is "no duty to defend" against a suit seeking damages "to which the insurance does not apply."[21]

Certain claims are excluded from coverage under the policies. The psychotropic substances exclusion provides that the insurance "does not apply to . . . '**Bodily injury**,' 'property damage' or 'personal and advertising injury' arising out of, or **alleged to arise out of the inhalation of**,

---

[20]    R. Doc. 21-1, at 3-4.
[21]    *Id.*

8

ingestion of, contact with, exposure to, existence of, or presence of **psychotropic substances**."[22] The policies define a "psychotropic substance" as "any legal or illegal drug or substance that: (1) [a]ffects the mind, mood or other mental process; or (2) [i]mpacts the brain or central nervous system; or (3) [i]s hallucinogenic."[23] The policies provide that "[p]sychotropic substances include . . . whippets, laughing gas [and] poppers . . . ."[24]

Here, the insurers rely on the psychotropic substances exclusion to argue that there is no duty to defend. The insurer "bears the burden of proving the applicability of an exclusionary clause within a policy." *Doerr v. Mobil Oil Corp.*, 774 So. 2d 119, 124 (La. 2000); *see also Farrell Lines, Inc. v. Insurance Co. of North America,* 789 F.2d 300, 306 (5th Cir. 1986). "A duty to defend will exist unless the allegations are such that every claim pleaded in the complaint (and otherwise falling within the insuring claim) unambiguously falls within an exclusion." *Martco*, 588 F.3d at 875 (citing *Alert Centre, Inc. v. Alarm Protection Servs., Inc.*, 967 F.2d 161, 163 (5th Cir. 1992)).

---

[22]    R. Doc. 21-5 at 46 (emphasis added).
[23]    *Id.*
[24]    *Id.* at 5.

In interpreting the statutory "owned vehicle" exclusion, which excludes insurance coverage for an insured suffering bodily injury while occupying a motor vehicle owned by the insured that is not a vehicle insured under the policy, the Louisiana Supreme Court applied the following method of analysis:

> An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code. The judiciary's role in interpreting insurance contracts is to ascertain the common intent of the parties to the contract.
>
> Words and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning. An insurance contract, however, should not be interpreted in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or to restrict its provisions beyond what is reasonably contemplated by unambiguous terms to achieve an absurd conclusion. The rules of construction do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clarity the parties' intent.
>
> Ambiguous policy provisions are generally construed against the insurer and in favor of coverage. Under this rule of strict construction, equivocal provisions seeking to narrow an insurer's obligation are strictly construed against the insurer. The strict construction principle applies only if the ambiguous policy provision is susceptible to two or more *reasonable* interpretations; for the rule of strict construction to apply, the insurance policy must be not only susceptible to two or more interpretations, but each of the alternative interpretations must be reasonable.
>
> If the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written. Courts lack the authority to alter the terms

10

of insurance contracts under the guise of contractual interpretation when the policy's provisions are couched in unambiguous terms. The determination of whether a contract is clear or ambiguous is a question of law.

*Mayo v. State Farm Mut. Auto. Ins. Co.*, 869 So. 2d 96, 99-100 (La. 2004) (internal citations omitted) (citing, *inter alia*, *Cadwallader v. Allstate Ins. Co.*, 848 So. 2d 577, 580 (La. 2003); *Carbon v. Allstate Ins. Co.*, 719 So. 2d 437, 439 (La. 1998); *La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So. 2d 759, 763 (1994); *Carrier v. Reliance Ins. Co.*, 759 So. 37, 43-44 (La. 2000)); *see also* William Shelby McKenzie and H. Alston Johnson, III, 15 *Louisiana Civil Law Treatise: Insurance Law and Practice*, § 1:4 (4th ed.).

Here, the Court finds that Combel's alleged use of and injuries from nitrous oxide inhalation are unambiguously within the policies' definitions of "psychotropic substances." The policies define a "psychotropic substance" as "any legal or illegal drug or substance that: (1) affects the mind, mood or other mental process; or (2) impacts the brain or central nervous system . . . ."[25]  Combel describes nitrous oxide inhalation as causing "euphoric, dissociated, and out-of-body experiences,"[26] which clearly "affect the mind"[27] within the terms of the exclusion. Combel alleges that inhalation

---

[25]  R. Doc. 21-5 at 46 (cleaned up).

[26]  R. Doc. 1-1 at 6.

[27]  R. Doc. 21-5 at 46 (cleaned up).

11

of high concentrations of nitrous oxide, which she allegedly inhaled "almost continu[ally],"[28] can cause "neurological damage" and "serious and permanent . . . neurological injuries."[29]   These alleged injuries clearly "impact the brain or central nervous system" within the language of the policy.[30]   Combel further alleges that when nitrous oxide is inhaled to product a high, it is commonly referred to as "whippets, poppers, or laughing gas."[31] "Whippets, laughing gas, and poppers"[32] are specifically excluded by the policy language.  Exclusions are construed against the insurer only when they are ambiguous.  *Mayo*, 869 So. 2d at 99-100.  Here, the policy could not be clearer that injury from the inhalation of nitrous oxide products is excluded.

The Court lacks "the authority to alter the terms of insurance contracts under the guise of contractual interpretation when the policy's provisions are couched in unambiguous terms."  *Cadwallader*, 848 So. 2d at 580.  To interpret the policies as not excluding bodily injury arising from the inhalation of nitrous oxide would impermissibly alter the terms of the policies at issue here.  Based on the allegations, there is no genuine dispute

---

28    R. Doc. 1-1 at 15.
29    R. Doc. 1-1 at 6, 7.
30    R. Doc. 21-5 at 46 (cleaned up).
31    R. Doc. 1-1 at 4.
32    R. Doc. 21-5 at 46 (cleaned up).

12

that the use of nitrous oxide at issue in the personal injury suit is a "psychotropic substance" as defined in the policies.  The Court finds that Combel's claims against Tahoe are excluded from coverage as a matter of law.

Combel nevertheless argues that the provisions are in fact ambiguous. Combel argues that the psychotropic substances exclusion is subject to two interpretations: (1) substances that have only one use or purpose, which is to induce an altered mental state, or (2) substances in that category and substances that can be misused to induce an altered mental state but also have other safe or legitimate uses.[33]

The Court finds that Combel's proffered interpretation is an "unreasonable" and "strained" reading of the policies. *Carrier*, 759 So. 2d at 43.  First, the language of the exclusion expressly includes "any legal or illegal drug or substance" that, when inhaled or ingested, alters one's mental state.[34]  The use of the word "any" here sweeps broader than Combel asserts; the language is not susceptible to a reading that would cover only substances that can only be a hallucinogen.  The policy says nothing of the sort.

Further, Combel's proffered interpretation is unreasonable because the policy itself specifically lists "whippets, laughing gas [and] poppers . . ."[35]

---

[33]     R. Doc. 27 at 2.
[34]     R. Doc. 21-5 at 46.
[35]     *Id.* (cleaned up).

as examples of psychotropic substances. The policy specifically excludes coverage of nitrous oxide products when in the form of "whippets, laughing gas [and] poppers . . . ."[36] This is true even though nitrous oxide does have legitimate, nonharmful uses as a whipped cream dispenser accelerant. It thus cannot be that the exclusion applies only to substances that exclusively have a mind-altering purpose.

Because Combel does not offer a reasonable interpretation, the policy language is not ambiguous, and the exclusion applies. *Mayo*, 869 So. 2d at 99-100 ("The strict construction principle applies **only** if the ambiguous policy provision is susceptible to two or more **reasonable** interpretations . . . .") (first emphasis added). The Court finds that there is no genuine dispute of material fact as to whether the claims against Tahoe fall within this exclusion and that Century and United are entitled to judgment as a matter of law.

Combel and Tahoe make two arguments against this conclusion. Neither persuades. First, Combel and Tahoe assert that summary judgment is premature because discovery has not been completed. Rule 56(d) provides that if "the nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition," the court

---

[36] *Id.*

may defer considering the motion or allow time for discovery.  Fed. R. Civ. P. 56(d).

Combel and Tahoe assert in their motions that discovery is required to evaluate the psychotropic substances exclusions.  Tahoe asserts that it is entitled to discovery concerning (1) the specific nitrous oxide products Combel allegedly purchased or used and (2) whether those products qualify as "psychotropic substances" under the policy definitions.  Combel argues that she needs discovery (1) to determine whether the insurers knew about the products Tahoe sold when the policies were issued and (2) whether Tahoe's premium included a "significant discount for the gap in coverage created by the psychotropic substances exclusions."[37]

The proposed discovery would not produce anything relevant to the contract interpretation issue here.  This is a contract interpretation question that is ripe for decision on summary judgment.  *Bonin v. Westport Ins. Co.,* 930 So. 2d 906, 910 (La. 2006).  Combel is suing for injuries she allegedly received inhaling nitrous oxide products.  As established above, such injuries are clearly, unambiguously excluded by the psychotropic substances exclusion.  The Court finds that additional discovery is not needed to address this straightforward contract interpretation question, and there are no

---

[37]     R. Doc. 27 at 5.

outstanding facts "essential to justify" the opposition of Combel or Tahoe. Fed. R. Civ. P. 56(d).

Second, Combel argues that the Court must deny summary judgment because enforcing the exclusions as written renders coverage illusory. Combel argues that because Tahoe runs a "gas station, head shop, or tobacco store," enforcing the psychotropic substances exclusion would result in Tahoe having no coverage for injuries from "most of its products."[38]

This purely conclusory argument is facially without merit. The argument is unsupported by any allegations in the complaint that would suggest that gas stations, head shops, and tobacco stores mostly purvey psychotropic substances. Such an understanding would require concluding that "most of" a gas station's products are not gas, and "most of" a tobacco store's products are not tobacco.

The Court rejects this wholly conclusory argument as unsupported by any allegations in the complaint that the products sold at "gas stations, head shops, and tobacco stores" are mainly psychotropic substances.[39] The complaint does not support a plausible argument that the psychotropic

---

[38]    R. Doc. 27 at 4.
[39]    Although the Court's decision is based on the complaint and the policy in accordance with the Eight Corners rule, the Court notes that Tahoe submitted an affidavit that says is it not even a head shop, gas station store, or a tobacco store, but an adult novelty retail store.

substances exclusion would "totally exclude" all coverage under Tahoe's comprehensive liability insurance policy. *Compare Orleans Parish Sch. Bd. v. Scheyd, Inc.*, 673 So. 2d 274, 279 (La. App. 4 Cir. April 24, 1996) ("It would be illogical, and perhaps against public policy, to provide a specific coverage, collect a premium, then by way of endorsement, totally exclude that coverage.").

This is a clear legal question of contract interpretation. There is no genuine dispute of material fact. Century and United are thus entitled to summary judgment on the duty to defend claim as a matter of law.

### B. Duty to Indemnify

As discussed above, an insurer's duty to defend suits is broader than its obligation to indemnify for damage claims. *Suire,* 907 So. 2d at 52. Thus, while the duty to defend applies "whenever the pleadings against the insured disclose even a possibility of liability," *Sibley v. Deer Valley Homebuilders, Inc.,* 32 So. 3d 1034, 1039 (La. App. 2 Cir. 2010), the duty to indemnify arises only when the insured is found liable for a loss that is covered by the policy. *Chi. Prop. Interests, LLC v. Broussard,* 8 So. 3d 42, 48 (La. App. 5 Cir. 2009).

An insurer owing no duty to defend owes no duty to indemnify. *See Am. Nat'l Gen. Ins. Co. v. Ryan,* 274 F.3d 319, 324 (5th Cir. 2001); *see also Wagner v. Tammany Holding Co. LLC,* 135 So. 3d 77, 86 (La. App. 4 Cir.

2012) ("When an exclusion to a policy is applicable, the insurer owes no duty to defend or indemnify the insured."). The "duty to indemnify may be resolved at summary judgment . . . when 'the insurer has no duty to defend and the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify.'" *VRV Dev. L.P. v. Mid–Continent Cas. Co.,* 630 F.3d 451, 459 (5th Cir. 2011) (citations omitted). Here, the Court finds that Century and United had no duty to defend Tahoe because there was no possibility of liability under the policies. This finding is conclusive on the indemnification issue as well. Because the policies excluded claims for injury arising out of the inhalation of psychotropic substances, Century and United have no duty to make payment for possible future liabilities Tahoe incurs in the underlying personal injury litigation.

Thus, the Court grants Century and United's motion for summary judgment on indemnification. The Court finds that the policies' psychotropic substances exclusions exclude coverage for the claims against Tahoe in the underlying suit and that Century and United therefore have no duty to defend or indemnify Tahoe in the underlying suit.

## IV.   CONCLUSION

The Court GRANTS the motion for summary judgment.  The Court finds that Century and United have no duty to defend or indemnify Tahoe in the underlying suit.


New Orleans, Louisiana, this 19th day of March, 2026.


_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE